| | | |
|---|---|---|
| NATALIE HENDERSON INDIVIDUALLY AND AS NATURAL TUTRIX OF HER MINOR CHILD "GH" | * | NO. 2022-CA-0655 |
| | * | |
| | | COURT OF APPEAL |
| | * | |
| VERSUS | | FOURTH CIRCUIT |
| | * | |
| JOSH CAPDEVILLE, CITIZENS' COMMITTEE FOR EDUCATION D/B/A HOMER A. PLESSY COMMUNITY SCHOOL AND GUIDEONE INSURANCE | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-03150, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Chief Judge Terri F. Love**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Paula A. Brown, Judge Tiffany Gautier Chase)


Marcus J. Plaisance
Mark David Plaisance
PLAIANCE LAW, LLC
P O Box 1123
Prairieville, LA 70769

Elizabeth A.B. Goree
THE LAW OFFICE OF ELIZABETH GOREE
4917 S. Sherwood Forest Blvd., Suite 200
Baton Rouge, LA 70816

Hunter F. Thomas
THOMAS LAW FIRM
201 St. Charles Avenue, Suite 2500
New Orleans, LA 70170

      COUNSEL FOR PLAINTIFF/APPELLANT


William P. Gibbens
Gwyneth O'Neil
SCHONEKAS, EVANS, McGOEY & McEACHIN, L.L.C.
Suite 1600

909 Poydras Street
New Orleans, LA 70112

COUNSEL FOR DEFENDANT/APPELLEE

**JUDGMENT REVERSED AND REMANDED**
**March 3, 2023**

This matter arises out of the alleged sexual assault of a 12-year-old minor by his teacher. Appellant Natalie Henderson ("Ms. Henderson"), individually and as tutrix of her minor child G.H.[1], filed suit against defendants, Josh Capdeville (Mr. Capdeville), Citizens' Committee for Education, D/B/A Homer A. Plessy Community School ("Homer Plessy") and GuideOne Insurance. Ms. Henderson alleges that Mr. Capdeville, G.H.'s homeroom and science teacher, sexually assaulted G.H. at school.

On appeal, Ms. Henderson argues the trial court erroneously granted Mr. Capdeville's motion for summary judgment. Mr. Capdeville asserted that the supporting documentation attached to his motion, which included affidavits of Homer Plessy personnel and his attorney, video statements from G.H., and G.H.'s medical records, demonstrated that Ms. Henderson would not be able to satisfy her burden of proof at trial. Ms. Henderson countered that Mr. Capdeville's evidence was insufficient to resolve all issues of material fact.

Based upon this Court's *de novo* review of the record, we find that genuine issues of material fact remain that preclude summary judgment relief. Accordingly,

---

[1] Pursuant to Uniform Rules, Courts of Appeal, Rule 5-2, the minor child shall be referenced as "G.H." in this opinion to protect his confidentiality.

1

we reverse the trial court's judgment and remand the matter to the trial court for further proceedings.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

G.H., a "high functioning autistic" child,[2] was twelve years old at the time of the alleged sexual assault(s). Sometime after G.H. returned home from school on February 12, 2020, Ms. Henderson overheard G.H. talking to himself in the shower. He mentioned not having a boyfriend. Ms. Henderson asked G.H. if anyone was touching him. G.H. responded that "Mr. C" had touched him and had put his penis in G.H.'s behind. He said the contact happened "yesterday" and had happened ten times.[3]

After G.H.'s disclosure that Mr. Capdeville had sexually assaulted him, Ms. Henderson took him to Children's Hospital. There, G.H. was forensically examined by medical staff and was assessed in the Social Services Section. The Children's Hospital medical records revealed, in part, that G.H. reported that Mr. Capdeville had put his put his penis in G.H.'s butt and did it "multiple times" and that Mr. Capdeville's finger touched G.H.'s private area and "started playing with it." G.H. further alleged that the first time it happened was "last Friday." He said he kept asking Mr. Capdeville to stop; but Mr. Capdeville did not. The Children's Hospital test results were negative for penile lesions, anal fissures, sperm cells, and sexually transmitted diseases.

---

[2] G.H.'s date of birth is June 17, 2007.

[3] The facts of G.H.'s initial accusation to Ms. Henderson of Mr. Capdeville's alleged sexual assault are taken from the Children's Hospital records that were admitted into evidence.

Based on a referral from Children's Hospital, Ms. Henderson took G.H. to the Audrey Hepburn Care Center where he was forensically examined. According to the interviewer's notes, G.H. disclosed, in part, that:

> One of his classmates bullies him at school. Mr. C put penis in my butt. Mr. C teaches us science. Don't tell my mom that he put his penis in my butt. No students in the classroom, just me and him. He closed the door, taking his clothes and my clothes off. Put his clothes and my clothes back on. Went downstairs to Ms. Andrea/math class. Multi-X (10x). Stayed in it. Hair on it (white). Hurting really bad. Finger touched my private area, started playing w/it, touching it a lot, kept telling him to stop. Said my mom should let people die. Put penis in butt. Not hurt now. Mom wanted to know if anyone been touching on me, it was Mr. C. Knew he was going to do something terrible.

Subsequently, Ms. Henderson reported G.H.'s sexual assault allegations to Megan Raychaudhuri ("Principal Raychaudhuri"), the principal of Homer Plessy. Principal Raychaudhuri conducted an investigation. The school's investigation did not substantiate the sexual assault allegations against Mr. Capdeville.

The New Orleans Police Department ("NOPD") also opened an investigation. Its investigation did not result in any charges against Mr. Capdeville.

Thereafter, Ms. Henderson filed a Petition for Damages ("the Petition"). The Petition alleged in part, that "[d]uring that period of time [when G.H. was assigned to Mr. Capdevillle's homeroom], Defendant Josh Capdeville, on at least one occasion on February 12, 2020, committed criminal sexual assault on plaintiff's minor child, 'G.H.,' during regular school hours on the school premises of Homer A. Plessy Community School."

### Mr. Capdeville's Motion for Summary Judgment

As part of his response to the Petition, Mr. Capdeville filed a motion for summary judgment,[4] maintaining that there was no physical evidence that he raped or otherwise assaulted G.H.   In support of his motion, Mr. Capdeville attached affidavits from Principal Raychaudhuri; two Homer Plessy teachers—Dr. Jancarlo "J.C." Romero and Andrea Arrellano—along with photographs of the inside of Mr. Capdeville's classroom and a closet;[5] an affidavit from Mr. Capdeville's attorney; G.H.'s medical records; and video interviews of G. H. recorded by Ms. Henderson.

Principal Raychaudhuri's Affidavit

Principal Raychaudburi averred that Homer Plessy has over twenty-two cameras in the school building and/or on the campus.  She said she watched over four hours of video surveillance footage from the school that was recorded on February 12, 2020. She stated that her review of the surveillance video showed that G.H. and Mr. Capdeville were never alone in the classroom; that G.H. left Mr. Capdeville's classroom with students to go to other classes and returned to Mr. Capdeville's classroom with other students; and that G.H. left school with his mother around 1:10 p.m.  Principal Raychaudhuri stated that no one reported viewing anything out of the ordinary or untoward on February 12, 2020.   The video surveillance footage reviewed by Principal Raychaudhuri was not introduced into evidence.

Principal Raychaudhuri's affidavit also asserted that she interviewed G.H. about the sexual assault allegations in the presence of Ms. Henderson. According to Principal Raychaudhuri, G.H. alleged that Mr. Capdeville raped him 10 times on

___

[4] Mr. Capdeville also denied the allegations of the Petition and filed a reconventional demand.  In the reconventional demand, Mr. Capdeville accused Ms. Henderson of defamation and making threats against him on social media cites.  Mr. Capdeville ultimately obtained a restraining order against Ms. Henderson.

[5] Attached to Dr. Romero's affidavit were photographs of the classroom and the classroom closet. The images depicted in the photographs were not clearly visible.

4

February 12, 2020, by the classroom door, and that the rape(s) had only occurred on that day.

### Dr. Romero's Affidavit

Dr. Romero said that he shared classroom space with Mr. Capdeville. Their classrooms were separated by partitions. Dr. Romero maintained that he could hear what was happening in Mr. Capdeville's classroom. In addition, Dr. Romero described a closet in the classroom as "extremely cluttered and inaccessible." Dr. Romero said, "[d]uring my tenure at Homer Plessy, I never once saw or heard Mr. Capdeville lingering in his classroom with G.H., nor any interaction between the two which I would have deemed inappropriate or concerning."

### Ms. Arellano's Affidavit

Ms. Arellano said that G.H. attended her class after he left Mr. Capdeville's class. She asserted that G.H. arrived on time to her class almost every day he was present at school. G.H. never complained to Ms. Arellano of any abuse by Mr. Capdeville.

### Attorney Affidavit

An affidavit from one of Mr. Capdeville's attorneys maintained that he had sent a DNA sample from Mr. Capdeville to NOPD. In response, a NOPD officer sent him an e-mail which stated that "[a] comparison was made to the buccal swab seized from your client. No DNA from your client was found within any evidence."

### G.H.'s Medical Records

Mr. Capdeville's motion for summary judgment emphasized that the Children's Hospital test results were negative for lesions, fissures, sperm cells, and sexually transmitted diseases.

### Ms. Henderson's Videos of G.H.

5

Mr. Capdeville offered into evidence two videos of G.H. recorded by Ms. Henderson in which G.H. discussed the sexual assault allegations. Mr. Capdeville noted that G.H. gave conflicting accounts of the alleged sexual assault(s) in the video statements than the accounts previously given in his medical records and in the interview with Principal Raychaudhuri. Mr. Capdeville highlighted that G.H. changed the location of the assault from near the classroom door to the closet, the number of times he was assaulted, and the time of day of the assaults, with G.H. adding that he was raped by Mr. Capdeville every morning at school.

Mr. Capdeville argued that no genuine issues of material fact exist because the totality of his evidence showed it was "factually impossible" that he assaulted G.H. on February 12, 2020, and any allegations that G.H. was assaulted on any other date were "unbelievable."

Mr. Capdeville's motion for summary judgment was fixed for hearing on January 20, 2022. He also argued that Ms. Henderson's opposition, which was filed on January 7, 2022, was untimely pursuant to La. CC.C.P. art. 966(B).[6] After listening to argument, the trial court reconvened the hearing to allow Ms. Henderson time to find and depose a potential witness, another minor child.

### Ms. Henderson's Opposition

At the time the summary judgment hearing was reconvened on May 27, 2022, Ms. Henderson had retained new counsel. Her counsel requested a continuance,

---

[6] La. C.C.P. art. 966(B)(2) provides that unless the parties and the court agree to an extension that "[a]ny opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the hearing on the motion."

arguing in part that he required additional time to investigate the allegations and conduct discovery. However, the trial court denied the request.

Ms. Henderson's written opposition to the summary judgment motion included affidavits from Ms. Henderson, Dr. Joseph Tramontana, a clinical psychologist who evaluated G.H., and Karen Lewis, one of G.H.'s teachers who had a master's degree in special education.[7]

Ms. Henderson's Affidavit

Ms. Henderson asserted that G.H.'s autism affects his cognitive functions, which means he processes information and communicates differently than other children his age. She averred that he has trouble recalling exact details and facts, and can become easily confused. Ms. Henderson stated that G. H. told her that Mr. Capdeville sexually assaulted him, and that he was sexually assaulted on more than one occasion. Ms. Henderson stressed that she has no reason to doubt G.H.'s assertion that he was sexually assaulted.

Dr. Tramontana's Affidavit

Dr. Tramontana stated that he interviewed G.H. on March 2, 2020, and on December 21, 2021. In the March 2, 2020 evaluation, he evaluated G.H. by posing extensive questions and concluded that the "boy's story about being sexually molested seems quite believable." Moreover, Dr. Tramontana indicated that "based on his psychological condition (high function autism) and his general presentation, it was highly unlikely that he would have fabricated these accusation[s]." In the second interview, when Dr. Tramontana asked G.H. why G.H. was there to see him

---

[7] The May 27, 2022 hearing transcript does not show that Mr. Capdeville re-urged his objection that Ms. Henderson's opposition was untimely or that the trial court ever ruled on the merits of the objection.

again, G.H. said, "[w]hat the teacher did to me!" The doctor asked if he still had a problem with that, and he responded, "[s]ometimes," and spontaneously added, "[h]e wasn't like that at first." When asked how he feels now, G.H. said, "[s]till upset."

<u>Ms. Lewis' Affidavit</u>

Ms. Lewis relayed that she has a master's degree in special education and is certified in mild-moderate autism, and considers herself qualified to give an expert opinion for children in this range of autism spectrum. She stated that she has been a teacher of G.H. since August 2021. Based on her experience, knowledge, training, and personal knowledge of G.H., she stated that he is not likely to create or make up a story about his abuse. Ms. Lewis opined that G.H. was "telling the truth to the best of his recollection of the events that happened to him."

Based on the evidence offered by Mr. Capdeville and her opposition, Ms. Henderson asserted that Mr. Capdeville's motion for summary judgment did not definitively rule out that G.H. was sexually assaulted. She pointed out that the evidence offered by Mr. Capdeville—wherein he disputes the sexual assault allegations and GH's counter claims that he was sexually assaulted multiple times—created genuine issues of material fact that prohibited summary judgment relief.

### Trial Court's Judgment

In granting summary judgment, the trial court opined as follows:

I don't know—and from what I have perceived and what I have learned of this case, and believe me, I've looked at it exhaustively—that there is any kind of corroboration that can come forward *except the testimony of this young man. But I don't know if that will carry your burden of proof. I don't think you have anything else to carry the burden of proof.* (Emphasis added).

So, I am going to deny your request for the continuance. And you did not file anything else; I have nothing to consider. So I'm going to grant the summary judgment because I do not discern any issues, genuine issues of material fact that have been put forward or any factual

8

information according to 966 that would allow this matter to go forward.

This timely appeal followed.

**STANDARD OF REVIEW**

Established jurisprudence provides that "[a]ppellate courts are to review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Descant v. Herrera*, 03-0953, p. 8 (La. App. 4 Cir. 12/22/04), 890 So. 2d 788, 793. "An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.*" Smith v. Our Lady of the Lake Hosp., Inc.,* 93-2512, p. 26 (La. 7/5/94), 639 So. 2d 730, 750.

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, . . . . The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). Pursuant to La. C.C.P. art. 966(D)(1),[8] the burden

---

[8] La. C.C.P. art 966 (D)(1) provides the following:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

of proof on a motion for summary judgment lies with the mover. However, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden ... does not require him to negate all essential elements of the adverse party's claim, action or defense." *Varnado v. 201 St. Charles Place, LLC*, 22-0038, p. 8 (La. App. 4 Cir. 6/29/22), 344 So.3d 241, 248 (quoting La. C.C.P. art. 966(D)(1). Instead, the mover must show an absence of factual support for one or more elements essential to the non-mover's claim. *Id.*, p. 8, 344 So.3d at 248-49. The burden of proof does not shift to the party opposing the summary judgment motion until the mover puts forth a prima facie case that no genuine issues of material fact remain. *D'angelo v. Guarino*, 10-1555, p. 4 (La. App. 4 Cir. 3/9/12), 88 So.3d 683, 686.

Our courts have recognized that a "genuine issue" is a "triable issue" in which reasonable persons could disagree. *Jones v. Estate of Santiago*, 03-1424, p. 6 (La. 4/14/04), 870 So.2d 1002, 1006. A "material fact" is one in which its existence or nonexistence may be essential to plaintiff's cause of action under the plaintiff's applicable theory of recovery. *Id.* In *Smith,* 93-2512, p. 27, 639 So.2d at 751, the Louisiana Supreme Court further explained that "[a] 'material' fact is one that would matter on the trial on the merits."

Notwithstanding the legislative mandate in La. C.C.P. art. 966 that the summary judgment procedure is favored, Louisiana jurisprudence recognizes that "any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Indulge Island Grill, L.L.C. v. Island Grill, L.L.C.*, 16-1133, p. 5 (La. App. 4 Cir. 5/10/17), 220 So.3d 154, 158 (quoting *Jones v. Stewart,* 16-0329, p. 8 (La. App. 4 Cir. 10/5/16), 203 So.3d 384, 389). "Even in the absence of a formal opposition to a motion for summary

10

judgment, the moving party must show that he is entitled to summary judgment. *Baker v. Ingram,* 447 So.2d 101, 102 (La. App. 4th Cir.1984).[] If the movant fails in his burden of proving that he is entitled to summary judgment as a matter of law, the burden never shifts to the adverse party, and the movant is not entitled to summary judgment." *In re Succession of Jones,* 14-0642, pp. 9-10 (La. App. 4 Cir. 11/12/14), 154 So.3d 624, 629-30. "To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact." *Madison v. Inter-Cont'l Hotels Corp.,* 14-0717, p. 6 (La. App. 4 Cir. 8/26/15), 173 So.3d 1246, 1250 (quoting *Richthofen v. Medina*, 14-294, p. 5 (La. App. 5 Cir. 10/29/14), 164 So.3d 231, 234.

Courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence in determining whether genuine issues of material fact exist for purposes of summary judgment. *Edgefield v. Audubon Nature Inst., Inc.,* 17-1050, p. 5 (La. App. 4 Cir. 3/27/19), 267 So.3d 738, 742.

## ASSIGNMENTS OF ERROR

On appeal, Ms. Henderson contends the trial court erred in granting summary judgment in the following respects: (1) in finding that Mr. Capdeville met his initial burden of proof to put forth evidence sufficient to resolve all issues of material fact; and (2) failing to find that reasonable inferences drawn from Ms. Henderson's opposition established genuine issues of material fact which required that the summary judgment motion be denied.

## LAW AND ANALYSIS

We begin our review by taking judicial notice that sexual assault claims are often unwitnessed and the validity of these claims often rests primarily on the

11

credibility of the purported victim and the accused; and moreover, in the instant case, the purported victim is a minor child with a developmental disability. We also note that neither Mr. Capdeville nor G.H. has provided sworn testimony.

### *Mr. Capdeville's Burden of Proof*

Ms. Henderson contends in her first assigned error that Mr. Capdeville did not meet his burden of proof as the mover so as to shift the burden of proof to Ms. Henderson. Ms. Henderson argues that Mr. Capdeville did not conclusively refute that material factual issues remain as to whether G.H. was sexually assaulted. She supports this argument by pointing out that Mr. Capdeville's summary judgment evidence acknowledged that G.H. consistently maintained that Mr. Capdeville sexually assaulted him on multiple occasions on various dates and/or locations. Contrariwise, Mr. Capdeville argues that the totality of the affidavits submitted by Principal Raychaudhuri and his Homer Plessy colleagues, along with the lack of physical evidence of sexual assault noted in G.H.'s medical records and by the NOPD, prove that it was impossible for Mr. Capdeville to have sexually assaulted G.H. Based on our review of the evidence, we agree with Ms. Henderson that Mr. Capdeville failed to prove that no genuine issues of material facts remained as to whether G.H. was sexually assaulted so as to entitle Mr. Capdeville to summary judgment.

Mr. Capdeville significantly relies on the video surveillance footage described by Principal Raychaudhuri to support his contention that it was "logistically and factually impossible" that he sexually assaulted G.H. on February 12, 2020. However, the flaws in this reliance include that the video surveillance footage itself was not introduced into evidence and the description as to what it purportedly shows is provided by an interested party, the principal of the defendant school, Homer

Plessy. Moreover, the described video surveillance footage is limited to activity which took place on February 12, 2020, whereas allegations have been raised that G.H. was assaulted on other dates. Ms. Henderson's lawsuit states that G.H. was assaulted "*on at least one occasion on February 12, 2020*", and Mr. Capdeville's own summary judgment evidence indicates that G.H. has given various statements as to not only the description of the assault(s), but also the dates, times, and precise locations of the assaults. For example, the Children's Hospital records indicate that G.H. said that Mr. Capdeville assaulted him the Friday before February 12, 2020. Accordingly, the described video surveillance footage does not rule out that G.H. could have been sexually assaulted on a date other than February 12, 2020, and does not preclude that an assault could have taken place outside the scope of the video surveillance cameras.

Similarly, the affidavits of Dr. Romero and Ms. Arrellano do not conclusively prove that Mr. Capdeville never sexually assaulted G.H. Although their statements attest that they did not witness any sexual assault by Mr. Cadeville, their statements are not dispositive as to whether or not any assault, in fact, ever occurred.

We also are not persuaded by Mr. Capdeville's arguments that the absence of physical evidence in G.H.'s medical records and the lack of formal charges brought by the NOPD definitively confirm that Mr. Capdeville did not sexually assault G.H. In particular, the medical records did not affirmatively find that G.H. was not sexually assaulted; indeed Children's Hospital referred G.H. for counseling. Moreover, G.H.'s sexual assault allegations included unwanted touching. Mr. Capdeville has provided no medical authority as to whether unwanted touching or the other assaults described by G.H. necessarily are always corroborated by physical evidence. Finally, as there are different evidentiary burdens in civil matters than

criminal matters, the lack of formal charges by NOPD against Mr. Capdeville is not conclusive proof that Mr. Capdeville did not sexually assault G.H.

As referenced herein, in granting summary judgment in Mr. Capdeville's favor, the trial court surmised that Ms. Henderson could not corroborate the sexual assault allegations other than through the testimony of G.H. and concluded that "I don't know if that will carry your burden of proof." However, although it may appear unlikely from the record that one party can prevail, summary judgment shall not be granted even if the trial court has grave doubts regarding a party's ability to establish disputed facts. *See Danna v. Ritz-Carlton Hotel Co., LLC*, 15-0651, p. 6 (La. App. 4 Cir. 5/11/16), 213 So.3d 26, 32.

Further, we find that in expressing doubt as to whether G.H.'s testimony would be sufficient to support the sexual assault allegations that the trial court essentially determined that G.H.'s testimony alone would not be sufficiently credible when weighed against the evidence offered by Mr. Capdeville. However, "a trial judge cannot make credibility determinations on a motion for summary judgment." *M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't*, 15-0860, p. 11 (La. App. 4 Cir. 12/2/15), 182 So.3d 312, 320. Our jurisprudence is well-settled that the weighing of conflicting evidence, consideration of the merits of the issues raised, and making evaluations of credibility have no place in the summary judgment procedure. *See Williams v. Metro Home Health Care Agency, Inc.*, 02-0534, p. 3 (La. App. 4 Cir. 5/8/02), 817 So.2d 1224, 1227. A trial is designed to evaluate the facts when credibility is at issue. *See Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533, p. 8 (La. 2/20/04), 866 So.2d 228, 234.

Here, we find that an essential disputed fact remains as to whether Mr. Capdeville sexually assaulted G.H., which was not conclusively refuted by the

14

evidence offered in support of Mr. Capdeville's motion for summary judgment. Therefore, Mr. Capdeville did not meet his burden of proof as the mover. Accordingly, this assigned error has merit.

Having determined that Mr. Capdeville failed to meet his burden of proof to be entitled to summary judgment, we pretermit discussion of Ms. Henderson's remaining assignment of error.

## CONCLUSION

After reviewing the appellate record *de novo,* the trial court erred in granting Mr. Capdeville's motion for summary judgment. Genuine issues of material fact remain that preclude summary judgment at this time. Therefore, we reverse the judgment and remand to the trial court for further proceedings consistent with this opinion.

**JUDGMENT REVERSED AND REMANDED**